ALTMAN & CO. *v.* UNITED STATES (No. 1328).[1]

LACE PINS OR SHAWL PINS—WHEN NOT JEWELRY.
  These lace pins or shawl pins, with fancy heads and steel shafts, gold plated, according to the testimony, are not known as jewelry and are not used for purposes of adornment.   On the authority of cases cited the goods are held not to be jewelry.— United States *v.* Flory (4 Ct. Cust. Appls., 87; T. D. 33367) distinguished.

## United States Court of Customs Appeals, May 18, 1914.

APPEAL from Board of United States General Appraisers, Abstract 34052 (T. D. 33872).

  [Reversed.]

*Brown & Gerry* for appellants.
*William L. Wemple,* Assistant Attorney General (*Charles E. McNabb,* assistant attorney, of counsel), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MONTGOMERY, Presiding Judge, delivered the opinion of the court:
  The merchandise in question in this case consists of lace pins with gold-plated steel shafts and paste heads in colors pink, blue, green, mauve, and white. Samples of the white pins only are produced, which bear somewhat the appearance of small imitation pearls, but the colored pins are not produced. The pins are all valued at less than 20 cents per dozen. They were assessed for duty as jewelry under paragraph 448 of the tariff act of 1909 and are claimed to be dutiable at 45 per cent ad valorem as manufactures of metal. The board overruled the protest on the authority of United States *v.* Flory (4 Ct. Cust. Appls., 87; T. D. 33367).
  The testimony in the case was that of an employee of the importer who testified that he was buyer in the notions department and that he purchased the goods in question; that the pins are known in the trade as lace pins or shawl pins; that he has never known them to be called jewelry; that he is not himself connected with the jewelry department; that he makes the purchases from a firm furnishing these pins to the importers and that he did not think the jewelry department buys from this party at all. The return of the appraiser is that the merchandise consists of lace pins with fancy heads and steel shafts, gold plated. This presents the only testimony in the case.
  The board was of the opinion that there was nothing in the testimony to overcome the presumption of correctness which attached to the collector's classification, and held that the goods were used as and for jewelry and come under the rule enunciated in United States *v.* Flory. It becomes necessary to consider, therefore, just what was decided in United States *v.* Flory.

---

[1] Reported in T. D. 34475 (26 Treas. Dec., 860).

The articles there in question were pins with solid heads. The goods were fully gold plated and made in imitation of one of the precious metals. It was said:

They are complete in themselves and have an individuality of their own which distinguishes them from the attire or wearing apparel to which they may be attached. They are valuable to the consumer rather because of their ornamental character than by reason of their utility, and are clearly designed to be used as articles of personal adornment. In fact, except that they are somewhat smaller, there is nothing to distinguish the so-called lace pins from scarfpins or stick pins, and there is nothing about them which would lead the casual observer to believe that they are anything other than what they seem to be, namely, articles of gold designed to be worn on the apparel as an ornament.

It was further said:

It is true, as contended by counsel for the appellants, that there are hat, shawl, belt, toilet, and lace pins which are not commonly known as jewelry, and that the Board of General Appraisers as well as the courts have so declared (citing various cases to which reference will be had later).
\* \* \* The pins which were held by the board and the courts not to be commonly known as jewelry performed the office of mere pins, and in truth did not materially differ from the ordinary metal pins of commerce. They had longer shanks and larger heads than the ordinary pins, and the heads appear to have been composed not of metal, but either of imitation round or baroque pearls or of plain wax, paste, or glass colored to harmonize with the apparel to which they were attached. These variations from the common pin seem to have been inspired, however, not by the purpose of converting the articles into ornaments, but rather by the necessity of meeting special conditions arising from the thickness or the thinness of the materials to be pinned, and by the demands of good taste, which required that such pins should serve their utilitarian purpose without being unduly conspicuous.

It is clear that articles of this character were not intended to be covered by the decision in United States *v.* Flory.

The case cited by the Government, of United States *v.* Strauss & Co. (4 Ct. Cust. Appls., 386; T. D. 33797), adds nothing to the force of the Flory case as an authority for the Government, for in that case no sample being produced, it was asserted by the Government in its brief that the articles consisted of gold-plated lace pins classified as jewelry at 60 per cent ad valorem under paragraph 448 of the tariff act of 1909 and that the decision below was contrary to United States *v.* Flory, "which is identical with the present case." This was assumed by the court to be a correct statement of the facts, and we still have no reason to question that it correctly stated the facts. This being so, it furnishes no extension of the rule in the Flory case.

The Flory case did not overrule in any way the cases to which it referred which had dealt with pins designed not for use distinctively as articles of adornment, but rather to meet the necessity of meeting special conditions which required that they should serve a utilitarian purpose without being unduly conspicuous.

The cases which among others the court cites in United States *v.* Flory are T. D. 26679 and T. D. 26492, which apparently note the distinction between such pins as are here in question and those involved in the Flory case.

In T. D. 25213 the pins in question were small gilt pins with glass heads of various colors, including imitations of pearls, used to secure veils to hats and to fasten collars, belts, etc., known as lace pins, belt pins, and by other names, designed to serve the same purposes as the common and ordinary solid head or all-metal pins of commerce, utility rather than ornament being the primary intent of their employment. The pins ranged from seven-eighths of an inch to 1¼ inches in length. It was found that these pins were not commonly known as jewelry. A description of these pins corresponds almost precisely with the description of those involved in the present case. A distinction was made in the case between such pins and larger pins devoted to other purposes. The same distinction was noted in T. D. 26679, where the pins corresponding to those here in question were held not to be dutiable as jewelry, and again in Abstract 15614 (T. D. 28223).

We think on the authority of these cases that such pins as those here in question should not be held to be articles commonly known as jewelry, particularly in view of the testimony offered by the importers in this case.

The decision of the board is *reversed.*