UNITED STATES *v.* INTERNATIONAL FORWARDING Co. (No. 1436).[1]

1. CONSTRUCTION NOW STARE DECISIS.

"All articles commonly or commercially known as jewelry, or parts thereof, finished or unfinished," paragraph 448, tariff act of 1909, is more specific in its application than the provision with the proviso in that paragraph, and that this is so is now *stare decisis.*

2. JEWELRY AND UTILITY.

The contention made here that no article that possesses any degree of utility can be regarded as jewelry can not be upheld. Jewelry is often an article of utility.

3. EVIDENCE BEFORE THE BOARD.

There was before the board the return, the report, and samples. With the evidence before it, the board was warranted in finding the merchandise was known, if not commercially, then commonly, as jewelry, and it was properly assessed as such.

## United States Court of Customs Appeals, March 25, 1915.

APPEAL from Board of United States General Appraisers, Abstract 35337 (T. D. 34378).

[Affirmed.]

*Bert Hanson,* Assistant Attorney General (*Charles E. McNabb,* assistant attorney, of counsel), for the United States.

*Comstock & Washburn* for appellee.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

DE VRIES, Judge, delivered the opinion of the court:

The merchandise was reported to the collector by the appraiser at the port of Chicago, whereat it was imported, to consist of "certain white-metal guard chains set with imitation precious stones," and was returned by the collector as certain "necklaces" reported by the appraiser as stated. They were assessed for duty by the collector under the provisions of the first part of paragraph 448 of the tariff act of 1909, which reads:

Chains, pins, collar, cuff, and dress buttons, charms, combs, millinery and military ornaments, together with all other articles of every description, finished or partly finished, if set with imitation precious stones composed of glass or paste (except imitation jet), or composed wholly or in chief value of silver, German silver, white metal, brass, or gun metal, whether or not enameled, washed, covered, plated, or alloyed with gold, silver or nickel, and designed to be worn on apparel or carried on or about or attached to the person, valued at twenty cents per dozen pieces, one cent each and in addition thereto three-fifths of one cent per dozen for each one cent the value exceeds twenty cents per dozen; * * * all of the foregoing, whether known as jewelry or otherwise and whether or not denominatively or otherwise provided for in any other paragraph of this act, twenty-five per centum ad valorem in addition to the specific rate or rates of duty herein provided; * * *.

---

[1] Reported in T. D. 35272 (28 Treas. Dec., 521).

The importer, who is the appellee here, claims the merchandise properly classifiable for dutiable purposes under the last provision of said paragraph, which reads:

* * * All articles commonly or commercially known as jewelry, or parts thereof, finished or unfinished, including chain, mesh, and mesh bags and purses composed of gold or platinum, whether set or not set with diamonds, pearls, cameos, coral, or other precious or semiprecious stones, or imitations thereof, sixty per centum ad valorem.

The Board of General Appraisers sustained the protest, basing its decision upon a finding that the merchandise "is commonly or commercially known as jewelry." The Government appeals.

Samples of the merchandise were before the Board of General Appraisers and are before this court. They are as hereinbefore described. The "imitation precious stones" are in fact imitations of pearls, and each of the chains is equipped with a spring ring at the end by which may be attached any suitable article according to the fancy of the wearer. The chains are obviously designed to be worn about the neck and from their structure intended to present an ornamental appearance and effect. Indeed their elaborateness without any specific purpose of utility characterizes them as intended primarily as ornaments.

The construction of paragraph 448 of the tariff act of 1909 has so frequently been before this court that the legal relation of its respective provisions may be said to have been settled and all questions relating to that relation to have become *stare decisis*.

Briefly, it may be said that in United States v. Guthman, Solomons & Co. (3 Ct. Cust. Appls., 276; T. D. 32572), United States v. Goldberg's Sons et als. (3 Ct. Cust. Appls., 282; T. D. 32573), Guthman, Solomons & Co. v. United States (3 Ct. Cust. Appls., 286; T. D. 32574), Cohn & Rosenberger v. United States (3 Ct. Cust. Appls., 288; T. D. 32575), and Cohn & Rosenberger et als. v. United States (4 Ct. Cust. Appls., 378; T. D. 33536) it was decided and reaffirmed that the provision hereinbefore quoted, under which the appellees claim, and which provides for "all articles commonly or commercially known as jewelry, or parts thereof, finished or unfinished, * * *" is more specific in its application than the provisions with the proviso, the part of the paragraph under which these goods were assessed for dutiable purposes by the collector, quoted *supra*.

It is unnecessary to refer to those decisions here, but the fundamental principle of law above stated, as applied to that paragraph, may be assumed to be *stare decisis*.

The Government in its brief and at the oral argument in this case laid great stress upon the statement which may be quoted from its brief as follows:

Articles of utility are not jewelry.

In support thereof the cases of Robbins et al. v. Robertson (33 Fed., 708–711), United States v. Flory & Co. (4 Ct. Cust. Appls., 87–90;

T. D. 33367), and Altman & Co. *v.* United States (5 Ct. Cust. Appls., 296; T. D. 34475) were relied upon to sustain this contention. A careful reading of those decisions fails to unqualifiedly establish this contention. In the two decisions of this court, which relate to certain classes of pins, it will be found that the distinguishing language used by the court between articles of ornament and articles of utility in no wise lays down a hard and fast principle that articles of utility are not or may not in many instances be jewelry or that an article which serves a useful purpose can in no instance be jewelry. In those cases the language used by the court was descriptive of the articles before the court as being such as by nature and by use were not ornamental, but calculated solely for purposes of utility, and hence they could not be regarded as jewelry, which partakes of ornamentation. The language is that of description and not of legal differentiation. The court did not hold in either of those cases that an ornamental article, which in its intrinsic character would be commonly and commercially known as jewelry, by reason of some useful purpose which it was calculated to subserve, thereby lost its character as jewelry. Indeed, a moment's reflection will demonstrate that there are few articles of jewelry which, from the very nature of the goods being personal ornaments, do not subserve some purpose of utility. Common observation teaches that more often than not jewelry is constituted of some ornamental article of utility. The test, therefore, offered by the Government that an article which possesses any degree of utility can not be regarded as jewelry is not sound and can not be upheld. Nor is there anything in the case of Robbins *et al. v.* Robertson, *supra,* sustaining the contention made. The law of that decision, though orally given as a charge to the jury by Mr. Justice Lacombe as far back as 1888, is so replete with historical references and elaboration of what may and may not be jewelry and the legally evolutionary scope of that term that it may in its major parts be well quoted:

In the earlier tariff acts of 1789, 1790, and 1794, duty was laid upon jewelry and paste work. In 1816 duty was exacted upon jewelry, precious stones, and pearls of all kinds, set or not set, Bristol stones, all paste work, all articles composed wholly or chiefly of gold, silver, etc. In the tariff act of 1842, August 30, besides a duty upon gems, precious stones, and imitations thereof, there is laid a duty on jewelry composed of gold, silver, or platina, 20 per cent; and on gilt, plated, or imitation jewelry, 25 per cent. In the act of 1846 there was a duty also laid on jewelry, real or imitation. At that time, you will perceive, Congress had recognized that there existed a distinction between jewelry and imitations of jewelry; that there was such a thing as real jewelry; that there was such a thing as imitation jewelry. When, therefore, Congress undertook to legislate in 1883 by passing the tariff act under which these goods in suit were entered, there existed here a *statutory distinction between* "jewelry real" and "jewelry imitation." In other words, it was recognized by the statutes that both classes of articles existed—real jewelry and imitation jewelry. The act now before us, paragraph 459, lays a duty on "jewelry of all kinds, 25 per cent ad valorem." In view of the fact that, when the act was passed, it was known to Congress that a distinction between real and imitation jewelry as two different kinds of jewelry

had been made for many years in tariff acts, it must be assumed that Congress intended that all jewelry, the imitation jewelry as well as the real jewelry, should pay a duty of 25 per cent.

That brings us to the next question in the case, What is jewelry? The word "jewelry" is generally used as including articles of personal adornment, and the word further imports that the articles are of value in the community where they are used. A belt of cowry shells, a necklace of bears' claws, a head ornament of sharks' teeth. though possessing no value in themselves, are esteemed valuable in the communities where they are worn; and we, therefore, constantly find them referred to in books written in the English language—books of travel, standard works, encyclopedias, and scientific dissertations upon sociology—we find those articles described in those books as "jewelry." The articles of value used for personal adornment in our civilization are, and for centuries have been, the precious metals—gold and silver, to which, I think, platina is now generally added—and what are known as precious stones—the diamond, sapphire, ruby, etc. Articles manufactured from those for the purpose of personal adornment are known, as the witnesses on the stand told you, as articles of jewelry, and such testimony is accordant with your own knowledge as to what is the ordinary use of the term "jewelry."

We have found, however, that besides jewelry there is such a thing as imitation jewelry. Jewelry, of course, is an expensive article, and as many people desire to wear ornaments without being able to pay the price required for real jewelry, the manufacture and the use of imitation jewelry have come into existence. Now, what is an imitation piece of jewelry? It need not necessarily be a counterfeit—that is, it need not be an exact simulation of a particular article which it is intended to take the place of. If by a pleasing combination of appropriate materials, by an attractive arrangement of parts, an article is produced bearing a general resemblance to real jewelry ornaments, and suitable for similar uses, it may fairly be called imitation jewelry. Nor does the fact that the original jewelry of which it is an imitation has become obsolete prevent its being considered, in the ordinary use of the English language, as imitation jewelry. We know from our reading that three or four hundred years ago articles of jewelry were used to ornament the headgear and to ornament the dress. If their use has entirely ceased to-day, that fact would not make articles now reproduced in imitation of them any the less imitation jewelry because real jewelry of the same kind is not now worn. If, therefore, we had to deal only with the ordinary use of the terms of the English language in disposing of this case, I should leave no question to you for consideration.

After thus reading the history and development of the legal and descriptive scope of the term "jewelry" as used in our tariff laws, the learned judge proceeded to instruct the jury as to the rule of commercial usage. It will be noted that the present provision speaks of "all articles commonly or commercially known as jewelry." Utility is nowhere by Judge Lacombe made a legal differentiation of articles otherwise commonly known as or descriptively within the term jewelry.

The next point urged by the Government is that there was no evidence in the record to sustain the finding of the Board of General Appraisers that these importations were commercially known as jewelry. That is true. There was before the board only the return and report stated and samples of merchandise. The board, however, did not find that the merchandise was commercially known as jewelry only but found that it was commonly or commercially known as jewelry,

so that to reverse the findings of the board it is necessary to find that there is no substantial evidence that the articles are commonly known as jewelry as well as no such evidence that they were commercially known as jewelry. The board with the evidence aforesaid before it, we think, was amply justified in the finding that the merchandise was commonly known as jewelry. At least this court is not warranted in saying that there was no evidence before the board justifying that finding. In this particular, this case is on all fours with the case of Wolff *v.* United States (2 Ct. Cust. Appls., 11; T. D. 31572), wherein, upon a similar subject, this court said:

It follows that a case is presented wherein the board had before it samples of the merchandise, made a finding of fact with reference thereto, drew a conclusion of law from these findings, and no evidence has been introduced to overcome the same, nor is there any evidence presented by this record which controverts the same.

Whether the article is commonly known as jewelry within paragraph 434 of the tariff act of 1897 is a question of fact to be determined by the board. It is a question of fact susceptible of proof or disproof by evidence. As to the character of that evidence this court is not now called upon to decide. We agree with the United States Circuit Court of Appeals for the Second Circuit in the case of United States *v.* Schiff (139 Fed., 549), wherein, in construing paragraph 434, the court said:

We do not deem it important to attempt a comprehensive definition of the word "jewelry" or of the phrase "articles commonly known as jewelry." The only relevant question now before the court is, Were the articles in controversy, at the date of importation, commonly known as jewelry? If they were so known the collector was right; if not, the board and Circuit Court were right. The question is one of fact and we see no reason to disturb the finding of the board   *   *   *.

Moreover, it may be noted that in the case of Guthman, Solomons & Co. *v.* United States (3 Ct. Cust. Appls., 286; T. D. 32574) essentially the same merchandise was in issue. In Cohn & Rosenberger *et als. v.* United States (4 Ct. Cust. Appls., 378; T. D. 33536), a new record was made up in view of the previous decision and many witnesses testified upon behalf of the Government. The following testimony is taken from that record:

Q. (By Mr. WELCH.) Now refer to protest No. 611892. Will you please examine same and state whether you brought with you a sample representing those goods— in a general way, not each item.

(Witness produces sample.)

Q. What is the article?—A. It is a chain to be worn around the neck to be used for fans, muffs, etc.

Q. Of what material is this chain made?—A. That is made of——

Mr. WOOD. If you know.

A. I am only stating what I think I know. This is white metal, so far as I know, plated with a color to imitate platinum.

Q. And what is the character of the stones with which it is decorated—A. Imitation.

Nevertheless, in the presence of this issue and evidence the Government there agreed and stipulated in its brief "that the articles were both commonly and commercially known as jewelry," and this court accordingly rendered decision.

There is much said in this record upon the subject that the importers under various tariffs acts have made inconsistent claims that some of the articles here in question were jewelry accordingly as the rate of duty was for or against them. This argument can have no considerable force with this court. It is counterbalanced by the fact that of necessity, if the importers were making conflicting claims, the Government itself was making conflicting assessments and that each party was betaking itself to its best interests. Moreover, in an extended period of time such as is covered by the various tariff acts, the modes of fashion, the caprice of individuals, and the exigencies of trade are so variant, as is well known, that articles which in one year may be worn for one purpose, such as jewelry, may in another year be entirely discarded and not be regarded by the trade or public as such. Indeed, merchants may and often do purposely and legally manufacture their importations to meet particular tariff conditions and thus might well to-day so construct a theretofore otherwise well-known article as to bring it within a different tariff description or nomenclature. In the light of such well-known conditions, therefore, the inconsistent contentions of the respective parties to the record, running over an extended period of time, afford neither a safe nor valuable guide to decision.

Affirmed.