(C. D. 1639)

GREATREX, LIMITED
J. J. GAVIN & CO., INC. } v. UNITED STATES

United States Customs Court, Second Division

(Decided August 19, 1954)

*Barnes, Richardson & Colburn* (*Edward N. Glad* of counsel) for the plaintiffs.
*Warren E. Burger*, Assistant Attorney General (*Richard M. Kozinn*, trial attorney), for the defendant.

Before Lawrence, Rao, and Ford, Judges

Lawrence, Judge: Certain imported electric flatirons were classified by the collector of customs as household utensils pursuant to the provisions of paragraph 339 of the Tariff Act of 1930 (19 U. S. C. § 1001, par. 339), and duty was imposed thereon at the rate of 40 per centum ad valorem.

Plaintiffs, by their protest, claim that the merchandise should be classified as articles having as an essential feature an electrical element or device and dutiable, accordingly, at 15 per centum ad valorem as provided in paragraph 353 of said act (19 U. S. C. § 1001, par. 353), as modified by the General Agreement on Tariffs and Trade (82 Treas. Dec. 305, T. D. 51802), or, alternatively, that the merchandise consists of articles or wares not specially provided for, composed of metal, and dutiable at 22½ per centum ad valorem in paragraph 397 of said act (19 U. S. C. § 1001, par. 397), as modified by said General Agreement on Tariffs and Trade.

## The Statutes

The statutes above cited read, so far as pertinent here, as follows:
Paragraph 339 of the Tariff Act of 1930:

Par. 339. Table, household, kitchen, and hospital utensils, and hollow or flat ware, not specially provided for: * * * composed wholly or in chief value of copper, brass, steel, or other base metal, not plated with platinum, gold, or silver, and not specially provided for, 40 per centum ad valorem; the foregoing rates shall apply to the foregoing articles whether or not containing electrical heating elements as constituent parts thereof.

Paragraph 353 of said act, as modified, *supra*:

* * * articles having as an essential feature an electrical element or device, such as electric motors, fans, locomotives, portable tools, furnaces, heaters, ovens, ranges, washing machines, refrigerators, and signs; all the foregoing (not including electrical wiring apparatus, instruments, and devices), finished or unfinished, wholly or in chief value of metal, and not specially provided for:

   *     *     *     *     *     *     *

    Other articles (except machines for determining the strength of materials or articles in tension, compression, torsion, or shear; flashlights; batteries; vacuum cleaners; and internal-combustion engines)_____ 15% ad val.

Paragraph 397 of said act, as modified, *supra*:

Articles or wares not specially provided for, whether partly or wholly manufactured:

   *     *     *     *     *     *     *

    Composed wholly or in chief value of iron, steel, lead, copper, brass, nickel, pewter, zinc, aluminum, or other metal (not including platinum, gold, or silver), but not plated with platinum, gold, or silver, or colored with gold lacquer:

   *     *     *     *     *     *     *

    Other (except slide fasteners and parts thereof)_____ 22½% ad val.

The provision for household utensils in paragraph 339, *supra*, is controlled by the doctrine of chief use, and the decision of the collector of customs carries with it the presumption that he has found all pertinent facts necessary to establish the chief use of the commodity as a household utensil. If the article before us be, in fact, a household utensil, it is of no consequence that it may also be an article having certain electrical features, as described in said paragraph 353, for the simple reason that paragraph 339, *supra*, which enumerates household utensils among other articles provides that "the foregoing rates shall apply to the foregoing articles whether or not containing electrical heating elements as constituent parts thereof."

At the trial, it was stipulated and agreed between the parties that the merchandise is identical in all material respects to that involved in the case of *Greatrex, Ltd.* and *J. J. Gavin & Co., Inc.* v. *United States*, 30 Cust. Ct. 320, Abstract 57032, and the record in that case was, upon consent of the parties, received in evidence as a part of the record herein.

In the incorporated record, two witnesses were called by plaintiffs— Daniel R. Branen, president of Greatrex, Ltd., and Miss Eloise Davison, consultant in the field of household management and equipment. After a careful and thorough analysis of the record in that case, we reached the conclusion "that the plaintiffs have failed to overcome the presumption of correctness attaching to the collector's decision."

By virtue of the incorporation of the record in the earlier case, the following exhibits are before the court:

Exhibit 1—Sample representative of the controverted merchandise, except for the plug attached to the end of the electric cord.

Illustrative exhibit 2—Leather case in which the imported article is inserted before being offered for sale.

Illustrative exhibit 3—Adapter plug which accompanies the iron at time of sale.

Illustrative exhibit 4—Copy of advertisement appearing in the "New Yorker" magazine of October 21, 1950, depicting the imported article together with leather case and adapter plug.

It is agreed by the parties hereto that plaintiffs' exhibit 1 "is an article which has as an essential element, without which it will not operate, an electrical heating device which can only be activated by electricity" and that said exhibit "is composed in chief value of metal, not including platinum, gold or silver, and not plated with platinum, gold or silver or colored with gold lacquer."

Supplementing the evidence introduced in the original case, plaintiffs have offered the testimony of three more witnesses. None has been tendered by defendant in either case.

Plaintiffs' first witness at the second trial was Alexander Gessin, a registered pharmacist for 23 years, and for the past 2 years manager

and buyer for the Waldorf Astoria Drug Store of New York, with which he has been associated in business for 8 or 9 years.

The second witness, Murray H. Hardy, manager of Hardy Luggage, Inc., in the employ of a retail leather goods store in New York with which he had been associated for 15 years but prior to that time had been managing other similar shops selling trunks, leather goods, and traveling items, had been buying such articles for about 20 or 25 years and selling them for 32 years, dealing with retail shops in the metropolitan area and by mail throughout the United States.

The third witness who testified for plaintiffs was Mrs. Clara B. Schill, a housewife for 39 years, who not only maintains a home but has traveled extensively.

The substance of Gessin's testimony is that he has sold merchandise like exhibit 1 for 4 or 5 years, the majority of sales being to people traveling abroad; in addition to irons such as exhibit 1, he sells a complete selection of irons of the regular household type, including household irons produced by General Electric, Durabilt, Steam-O-Matic, Westinghouse, General Mills, and Sunbeam. The average household irons differ from exhibit 1 in that they have three times the ironing surface and are more practical for ironing over a long period of time; they are built to operate on 110 volts, which is the generally accepted voltage in New York City and in most parts of this country.

Gessin testified that he sells merchandise like exhibit 1 under the name of "Smoothie Traveling Irons," having a dual voltage of either 110 or 220 volts, the latter voltage being adapted for use "in any part of the continent"; that while there are household irons having a voltage of 220 volts, there are none that are built having both 110 and 220 volts.

When asked if he had ever known of exhibit 1 being used as a household utensil, Gessin testified—

Yes, because I can iron with it at home or abroad but I never offered it as a household utensil because it is impractical for extensive ironing. If a customer asks me for a household iron I instinctively reach for a bigger ironing surface. This is insufficient protection for the hand. In fact, the one fault of this particular iron, on this iron is extensive heating, the handle gets so hot that you can't handle it. This handle, if it is heated over a long period of time, you can't hold it. The handle is too close to the heating plate while a household iron has a higher handle where there is more space for the hand so that the hand doesn't get involved with the heat. Therefore, if I would offer an iron for household use for the comfort of the customer, I would offer one for her protection. I would offer for a traveling iron, I know they would only want to use it for occasional ironing, if they just want to take out a few wrinkles, they can do that in a few moments without injuring the hand.

Gessin further testified that merchandise such as exhibit 1 is sold in a zippered package, such as illustrative exhibit 2, with an adapter, illustrated by exhibit 3. The latter is included because the plug on exhibit 1 is an American type which will not fit in European electric

sockets. The latter require an adapter, such as illustrative exhibit 3, known in the trade as a European adapter. He has never sold merchandise like exhibit 1 to a customer who is seeking a household iron, because of its impracticability.

Plaintiffs' witness Hardy, who had been dealing with trunks, leather goods, and traveling items for many years, had sold merchandise such as exhibit 1 for about 5 years as a traveling iron, chiefly to women. Like the witness Gessin, he sold these irons in a packaged case, similar to illustrative exhibit 2, with a cord and an adapter; that the item was sold as a traveling iron, never as a household iron.

When asked if other commodities were held out to the trade as traveling kits or traveling articles of one kind or another, the witness enumerated "a shaving kit for a man"—"a bottled kit for a woman"—"a traveling tie case"—"traveling collar bag"—"a handkerchief case." He also testified that he always sells an adapter plug with merchandise like exhibit 1 but stated that to his knowledge the adapter plug would not fit any United States electric socket.

Hardy admitted to having used an article like exhibit 1 to iron the labels to be placed in the luggage that he sells but stated that it is not practical to use exhibit 1 any length of time, because the heating element is too close to the hand. Since the iron is not equipped with a thermostat, it gets very hot when in use. Hardy also testified that he had seen his wife using an iron like exhibit 1 but that it was too hot to handle for any household ironing; that it was merely used as an emergency iron in the home. It could not, however, compete with an ordinary household iron.

Plaintiffs' third witness, Mrs. Clara B. Schill, testified that as a housewife for many years she had not used an iron like exhibit 1 in her home but had employed a General Electric iron, about 6 inches long, 4 inches wide, and 4 inches high; that while she had owned an iron like exhibit 1 for 4 or 5 years, it was used in traveling, in hotel rooms, to take out wrinkles in her blouse, handkerchiefs, or a piece of ribbon, as she unpacked her luggage. A household iron would be too heavy to take along for such purposes; she would not use an iron like exhibit 1 at home because it gets hot quickly and can only be used for a very short time. This is especially true if one attempts to "damp iron" with such a small iron. The iron she uses in her home is substantially heavier than exhibit 1, and the degree of heat can be regulated.

The testimony of the five witnesses introduced on behalf of plaintiffs stands unrefuted and unrebutted.

In the original case (Abstract 57032, *supra*) brought by the same plaintiffs, a majority of the court was of the opinion that the "presumption of correctness attaching to the collector's decision has not

been overcome." The dissenting judge regarded exhibit 1 as a potent witness which, combined with the testimonial record, "shows affirmatively not only that it was designed for use as a traveling iron, but that it would be impractical to apply it to a household use" and that "the article is neither designed, suitable, nor adapted for use in home ironing, and would not be practical for such purpose."

Paragraph 339, *supra*, wherein household utensils may be classified, has long been regarded as a "use" paragraph (*United States* v. *The Friedlaender Co.*, 21 C. C. P. A. (Customs) 103, T. D. 46445). In order to be classified therein, the merchandise must be chiefly used in the home for the comfort and convenience of the household. *Frank P. Dow Co., Inc.* v. *United States*, 21 C. C. P. A. (Customs) 282, T. D. 46816. There is a presumption, of course, that the collector, in classifying the importation in controversy, found the imported irons to be chiefly used in the household. As above pointed out, we found and held upon the record before us in the previous case that the presumption had not been overcome. However, upon the amplified record now before us, we are of the opinion that the subject merchandise is not a household utensil either in fact or in law. The uncontroverted evidence now before us establishes to our satisfaction that the iron represented by exhibit 1 was not designed, intended, or fabricated for use chiefly in the household. Its character and construction do not fit it for such use. It is in a sense a miniature iron, designed and equipped to be packaged in a small leather case together with a cord and an adapter peculiarly fitted for the use of one while traveling. It is not unlike, in its general utility, many other articles which one uses while traveling but not generally in the household, such as sewing kits and handkerchief cases for women, or shaving kits, tie cases, and collar bags for men. It is well known that in paragraph 1531 of the Tariff Act of 1930 (19 U. S. C. § 1001, par. 1531) and in similar paragraphs of previous tariff acts (note paragraph 1432, Tariff Act of 1922; paragraph 360, Tariff Act of 1913; and paragraph 452, Tariff Act of 1909), there is a provision for "Bags, baskets, belts, satchels, cardcases, pocketbooks, jewel boxes," and so forth, in chief value of leather or parchment; "any of the foregoing permanently fitted and furnished with *traveling*, bottle, drinking, dining or luncheon, sewing, manicure, or similar sets * * *." [Emphasis added.] This clearly indicates that Congress was aware that there are many articles which are designed and fabricated for special use in traveling.

The foregoing considerations lead us to the conclusion that the irons in controversy are not, in fact, household utensils. Furthermore, it is well known that merchants who buy and sell commodities quite naturally study and observe the uses for which their products are adapted and endeavor to supply their customers with those items which are best suited and fitted for practical use. As stated by our

appellate court in *Kubie & Co.* v. *United States*, 12 Ct. Cust. Appls. 468, T. D. 40668—

Merchants purchase and importers import goods for sale and their testimony as to the known uses and consumers of the commodities in which they deal, coupled with the statement that they know of no other uses and no other consumers, is competent testimony and has a probative value which entitles it to be weighed as evidence. Klipstein *v.* United States (1 Ct. Cust. Appls. 122; T. D. 31120).

A case which applies here with appropriate force is *United States* v. *Borgfeldt & Co.*, 13 Ct. Cust. Appls. 620, T. D. 41461, wherein certain importations had been classified for duty as toys but which the court held were properly classifiable as musical instruments. In the course of its opinion, the court observed—

Aside from testifying as to the representative character of these boxes and as to the musical selections played by each, the witness gave no further testimony except to say that they were sold "to the musical trade; to the musical department of the toy department."

·The Government contends, first, that there was no evidence sufficient to overcome the presumed correctness of the collector's classification, and second, that the articles are not musical instruments but more in the nature of musical toys.

As to the first contention, this court has always recognized that the collector's classification is presumed to be correct. *It has also repeatedly held that such presumption may be overcome by the probative effect of the samples in the case.* Krusi v. *United States*, 1 Ct. Cust. Appls. 168, T. D. 31213; *United States* v. *Perkins*, Id. 323, T. D. 31430; *Wolff* v. *United States*, 2 Ct. Cust. Appls. 11, T. D. 31572; *United States* v. *International Forwarding Co.*, 6 Ct. Cust. Appls. 25, T. D. 35272; *Veit, Son & Co.* v. *United States*, 11 Ct. Cust. Appls. 81, T. D. 38732. [Italics supplied.]

See also *United States* v. *The Halle Bros. Co.*, 20 C. C. P. A. (Customs) 219, T. D. 45995.

In another case of *United States* v. *The Halle Bros. Co.*, 20 C. C. P. A. (Customs) 281, T. D. 46077, the court cited the *Borgfeldt* case, *supra*, with approval and gave expression to the following statement:

* * * It is true that under the language of said paragraph 1513 it will be presumed that the imported articles, having been found to be toys by the collector, are *chiefly used* for the amusement of children. *This presumption, however, disappeared when the testimony of the witness Kathryn Gifford and the sample were placed in evidence before the trial court.*

*It has been repeatedly held by this court that a presumption of correctness attaching to the collector's classification may be overcome by the probative effect of the samples in the case.* United States v. Borgfeldt & Co., 13 Ct. Cust. Appls. 620, T. D. 41461. [Italics supplied.]

Viewed in the light of the foregoing authorities, we are of the opinion that the undisputed testimony of the five witnesses who testified in the consolidated record, augmented by the evidentiary value of the samples (exhibit 1 and illustrative exhibits 2 and 3), compels the conclusion that the subject irons are not household

utensils, as that term has been interpreted by our appellate court (*United States* v. *The Friedlaender Co.* and *Frank P. Dow Co., Inc.* v. *United States, supra*).

Defendant contends, however, that it was clearly the legislative intention to include articles such as exhibit 1 within the purview of paragraph 339, *supra*, and invites our attention to the Summary of Tariff Information (1929), wherein the following statement appears at page 728:

Description and uses.—This title includes all the familiar hollow ware and utensils of tin, brass, copper, and other metals, silver plated ware (but not solid silverware), and all utensils containing electrical devices. The latter include toasters, percolators, electric flatirons and similar articles.

There is nothing in that statement to indicate that the electric flatirons referred to are of the type of those here in controversy. It is well known, of course, that there are many flatirons of the household type which operate electrically.

Defendant also refers to the statement in said summary at page 730, which reads:

Among the articles held dutiable under paragraph 339 are the following: *Electric traveling irons*, Ab. 47950; * * *. [Italics quoted.]

Abstract 47950 is the case of *Buschman Bros.* v. *United States*, 46 Treas. Dec. 675, decided October 24, 1924, and the opinion, as reported, reads—

It was held that the provision in paragraph 339 for household utensils containing electric heating elements is more specific than the general provision in paragraph 399 for articles of metal. * * *

An examination of the official record in that case indicates that it was not disputed that the electric traveling irons there under consideration were household utensils.

Another case cited by defendant is *Elector-Thermo-Dynami* v. *United States*, 51 Treas. Dec. 1313, Abstract 3430, decided June 23, 1927. The recorded opinion reads as follows:

The testimony as to the traveling irons was to the effect that they are generally used by traveling people and that the small size of the irons and the fact that they come in boxes made expressly therefor equipped with cord, plug, etc., and are adapted to different voltages fits them for traveling purposes. On cross-examination, however, it appeared that the witness's personal use of these irons was confined to his experience abroad where he stated he used them in his home, boarding house, or hotel. *The court was not convinced that these flatirons are not as equally adaptable for household purposes as they are for traveling purposes and the proof did not sufficiently establish that they are chiefly used elsewhere than in households.* * * * [Emphasis added.]

The evidence in the case before us clearly demonstrates that the flatirons in issue are not "as equally adaptable for household purposes as they are for traveling purposes."

Both of the cases just discussed arose during the lifetime of the Tariff Act of 1922, and the competing provisions of the law there considered were paragraph 339 and the catchall metal provision in paragraph 399 of that act. The decisions were promulgated prior to the passage of the Tariff Act of June 30, 1930, and defendant contends that, since the first of the two cases was specifically drawn to the attention of Congress, we are confronted with an instance of legislative sanction of judicial interpretation "and a clear intent upon the part of Congress to include such articles as Exhibit 1 within paragraph 339, *supra.*"

While the doctrine of legislative approval of judicial interpretation is at times invoked as a rule of construction in arriving at the meaning of statutes, we do not think this is an instance where that rule should be applied. It is obvious from the reported decisions in the *Buschman* and *Elector-Thermo-Dynami* cases, *supra*, that the issue was neither exhaustively nor vigorously contested, since we gather from the court's records that it was not disputed that the flatirons in those cases were, in fact, household utensils.

Since the Tariff Act of 1930 was enacted, our appellate court in the *Friedlaender* and *Dow* cases, *supra*, and in other cases, has laid down the principle that to come within the statutory meaning of the expression "household utensil" an article must be so designed and constructed as to be chiefly used as an article of utility in the home.

In the instant case, as we have already pointed out, the testimony is unrefuted that the subject merchandise is not of the character, design, or construction which adapts it for practical use in the household as a flatiron, and this evidence finds convincing support in what the courts characterize as a potent witness, namely, the sample of the merchandise.

We, accordingly, find and hold that the importation under consideration is not a household utensil within the scope and meaning of paragraph 339 of the Tariff Act of 1930.

Since the parties are agreed that plaintiffs' exhibit 1—the subject merchandise—"is an article which has as an essential element, without which it will not operate, an electrical heating device which can only be activated by electricity," we find and hold that the importation in controversy is within the class of exemplar articles enumerated in paragraph 353, *supra* (*United States* v. *Dryden Rubber Co.*, 22 C. C. P. A. (Customs) 51, T. D. 47050), and, accordingly, dutiable at the rate of 15 per centum ad valorem, as claimed by plaintiffs. Even though the commodity be an article wholly or in chief value of metal within the meaning of paragraph 397, *supra*, the provision in paragraph 353 is clearly more specific.

To the extent indicated, the protest is sustained and judgment will issue accordingly.